**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MINH-DUNG T. NGUYEN, | No. CIV S-07-0348-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| _____/ | |

      Plaintiff, who is proceeding pro se, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the consent of the parties, this case is before the undersigned for final decision on plaintiff's motion for summary judgment (Doc. 18) and defendant's cross-motion for summary judgment (Doc. 22).

/ / /

/ / /

/ / /

/ / /

/ / /

# I. PROCEDURAL HISTORY

Plaintiff, who is a lawful permanent resident alien, applied for social security benefits on May 10, 2004. In her application, plaintiff claims that disability began on July 13, 2002. In a disability report submitted with her application, plaintiff describes her disability as follows:

> I have osteoarthritis (back pain, knee pain) which results in restrictions such as "no prolonged standing/walking," "no climbing/squatting/kneeling," etc.

In her motion for summary judgment, plaintiff adds that her osteoarthritis also affects her left shoulder, both arms, right elbow, hips, and thumbs. Plaintiff's claim was initially denied. Following denial of her request for reconsideration, plaintiff requested an administrative hearing, which was held on March 7, 2006, before Administrative Law Judge ("ALJ") Charles D. Reite. In his September 7, 2006, decision, the ALJ made the following findings:

1. Claimant has not engaged in substantial gainful activity since her alleged onset date of July 13, 2002;

2. Claimant has the following severe impairments: back pain; knee pain; and left shoulder pain;

3. Claimant does not have any of the related clinical findings so as to meet or equal the level of severity in the listings in Appendix 1, Subpart P, Regulations No. 4;

4. Claimant's subjective complaints are not fully credible;

5. Claimant has the residual functional capacity for light work with a sit/stand option, frequent use of the upper extremities, and no overhead reaching with the dominant right upper extremity;

6. Claimant is unable to perform her past relevant work

7. Claimant is 39 years old, and will be 40 years old on September 14, 2006, which is defined as a younger person;

8. Claimant completed high school and college and has both a Bachelor's degree and a Master's degree;

///

///

9. Based on the vocational expert testimony, claimant would be able to perform other work that exists in significant numbers in the regional and national economies, considering her age, education, past work, and residual functional capacity; and

10. Claimant was not "disabled" as defined in the Social Security Act, at any time through the date of this decision.

After the Appeals Council declined review on January 26, 2007, this appeal followed.

## II.  SUMMARY OF THE EVIDENCE

The certified administrative record ("CAR") contains the following medical evidence:  (1) July 22, 2002, physical report from Workers' Compensation Medical Centers (Ex. 1F, CAR 175-76); (2) diagnostic imaging report dated June 24, 2004 (Ex. 2F, CAR 179-80); (3) July 12, 2004, medical report by Steve Redmond, M.D. (Ex. 2F, CAR 177-80); (4) July/August 2004 residual functional capacity assessment by agency physician Frederick Entwistle, M.D. (Ex. 3F, CAR 181-88); (5) medical record dated May 26, 2005, from Avera United Clinic (Ex. 6F, CAR 192-93); (6) diagnostic imaging reports dated January 13, 2006 (Ex. 7F, CAR 194-96); (7) diagnostic imaging report dated March 13, 2006 (Ex. 10F, CAR 212); (8) report of May 6, 2006, orthopedic evaluation by agency physician Jane Wang, M.D. (Ex. 9F, CAR 200-09); (9) diagnostic imaging report dated June 7, 2006 (Ex. 10F, CAR 210-11); and (10) photocopy of undated diagnostic images of both knees (Ex. AC-2, CAR 230).

2002

A July 22, 2002, report from Workers' Compensation Medical Centers indicates a diagnosis of thigh strain.  The doctor prescribed six physical therapy visits and further evaluation.  There are no additional records for 2002.

2003

There are no records for 2003.

/ / /

/ / /

2004

On June 24, 2004, Douglas Kimmel, M.D., reported on x-rays of plaintiff's right knee. In his report, Dr. Kimmel noted: "No fractures, dislocations, or other significant osseous abnormalities are identified." Also on June 24, 2004, Dr. Kimmel reported on an x-ray of plaintiff's lumbosacral spine and noted:

> FINDINGS: Mild anterior wedging of the L1 vertebral body is identified. no fractures, spondylosis, or spondylolisthesis otherwise evidence. The intervertebral disk spaces are maintained. [¶] 7-mm calcification is projected upon the left kidney which may represent nephrolithiasis.

On July 12, 2004, Dr. Redmond reported on his recent evaluation of plaintiff. In his report, Dr. Redmond stated that he did not observe any muscle spasm and that plaintiff had a full range of motion in her spine and both knees. He did not report any reflex abnormalities, swelling, redness, or puffiness. Dr. Redmond assessed the following functional capacity:

> Based on the examination [plaintiff] should be able to lift and carry thirty pounds frequently. Standing and walking should not have any limitations. Sitting because it aggravates her low back she would nee [sic.] to have some breaks during and [sic.] eight hour day and probably would not have her sit more than two hours in a chair and do not have her sit on the floor. I would have her avoid stopping [sic.], climbing, and kneeling since that tends to aggravate her knee and her low back. She has no difficulty handling objects. No difficulty hearing, seeing. Speaking she does have an accent but I was able to understand her well. No problems with travel. No problems with exposure to dust, fumes, or temperature changes.

Dr. Redmond concluded that plaintiff had chronic low back and knee pain "which comes and goes" and did not think her condition would improve.

In the summer of 2004, agency physician Dr. Entwistle prepared a physical residual functional capacity assessment based on his evaluation of the medical records. He concluded that plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds; that plaintiff could stand, sit, and/or walk six hours in an eight-hour day; and that plaintiff was unlimited in her ability to push and/or pull. As to postural limitations, Dr. Entwistle concluded that plaintiff could frequently climb, stoop, kneel, crouch, and/or crawl, but that she should never

4

perform balancing activities.  The doctor did not note any manipulative, visual, environmental, or communicative limitations.  He noted:  "Severity of pain complaints and self-limitations of activity seem rather disproportionate to the objective findings on review of the records."

2005

The record contains a note dated May 26, 2005, apparently prepared following plaintiff's treatment at Avera United Clinic.  Subjectively, plaintiff complained of knee pain "on and off."  She also complained of a "pop in the knee."  Objectively, the examining physician noted that plaintiff "has full range of motion, the pop was not felt."  The doctor also observed "[n]o tenderness along the joint line" and that "ACL, MCL, LCL were all intact."

2006

On January 13, 2006, James Bronk, M.D., reported on x-ray of plaintiff's thoracic spine, cervical spine, and chest.  As to the thoracic spine, he noted:

> Two views show a slight convex curve right scoliosis along with mild straightening of the normal kyphosis.  The skeletal structures are intact and the paraspinous soft tissues are normal.  The disk space height is maintained throughout.

His final impression was:  "No focal or acute skeletal abnormalities."  As to plaintiff's cervical spine, Dr. Bronk reported on a normal cervical spine.  Similarly, Dr. Bronk did not note any acute cardiopulmonary pathology revealed by plaintiff's chest imaging.

Dr. James McMahon, M.D., reported on a March 13, 2006, x-ray of plaintiff's left shoulder and noted a normal shoulder.

The record contains a report by agency Dr. Wang following her comprehensive orthopedic examination on May 6, 2006.  Dr. Wang noted that plaintiff complained of low back pain, knee pain, and left shoulder pain.  Under "History of Present Illness" Dr. Wang reported:

> The claimant initially refused examination, tossing a letter from the disability office and stating, "Do you know you how to read this?"  She brought some x-rays to the examination and stated that the radiologist lied about the report and that she read it by herself and it showed that there are "no <u>strained</u> cartilage, decreased to 1/3 to 1/6 level." (emphasis in

      original). She also stated that she had x-rays in 2004, which did not show
serious damage. She thinks "the radiologist lied about it, since she could
not see it herself." She brought x-rays from March 13, 2006, which were
studies of the shoulder and neck. She proceeded to show me what she
thought was a fracture of her humerus.

On physical examination, Dr. Wang noted:

      The claimant walks normally from her car into the waiting room. She then
leaned against the wall while waiting to be examined. The claimant does
not require any assistive devices. Her gait pattern is normal. She refuses
to do a squat, but is able to toe stand, heel stand, and tandem walk toe to
heel. She is able to balance on either foot.

Dr. Wang did not note any back pain in either the sitting or supine positions. Plaintiff's range of motion of her back, hips, knees, shoulders, elbows, and wrists was normal. As to plaintiff's functional capacity, Dr. Wang concluded that plaintiff "could be expected to stand, sit, and walk with no restrictions." The doctor did not assess any restrictions on lifting, carrying, bending, stooping, crouching, or kneeling. Similarly, Dr. Wang did not note any manipulative, visual, communicative, or environmental limitations.

      On June 7, 2006, Dr. McMahon, reported on x-rays of plaintiff's knees. As to both knees, Dr. McMahon noted only "[m]inimal degenerative change medial compartment."

### III.  STANDARD OF REVIEW

      The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's

1  decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.
2  Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative
3  findings, or if there is conflicting evidence supporting a particular finding, the finding of the
4  Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).
5  Therefore, where the evidence is susceptible to more than one rational interpretation, one of
6  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.
7  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal
8  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th
9  Cir. 1988).

## IV.  DISCUSSION

In her motion for summary judgment, plaintiff lists the following "claims":

1. The 06/07/2006 Xray report of "minimal degenerative change" for both knees by the Radiologist James F. McMahon is a lie (the reality is that the muscles, tendons, and ligaments of both my knees have been extremely weak, which certainly results in my extremely weak, slow walking these days);

2. The Administrative Law judge ignored the detail "bony sclerosis" included in the 06/07/2006 Xray reports for both knees when making the decision on 09/07/2006 (while this critical detail "bony sclerosis" implies that the bone/joint has been hardened or stiffened, which can also explain why my walking has become weak, slow);

3. In the 09/07/2006 Decision by the Administrative Law Judge, Findings numbered 5 that "claimant [had] the residual functional capacity for light work with a sit/stand option" is erroneous (because Dr. Steven Redmond in the 07/12/2004 report did list the medical restriction of "not hav[ing] [the patient] sit more than two hours in a chair");

4. The 12/07/2006 second opinion Xray report of "normal right elbow" by the Radiologist James F. McMahon is also an obvious lie (the reality is that there is no more nerve response at the right hand, then no more use of the right hand/arm could be sustained by the elbow joint); and

5. In the 01/26/2007 Notice of Appeals Council Action, the Appeals Council lied about "reports from Solano County Health and Services Department" or "X-ray film of the right knee" listed as Exhibit AC-2 in the "Order of Appeals Council" (because in the "Administrative Transcript," there was

no report nor X-ray film of the right knee from Solano County Health and Social Services Department).

As to plaintiff's last "claim" – that the Appeals Council's decision referenced a non-existent exhibit – the record reflects that x-ray images of plaintiff's knees were in fact taken. Therefore, this argument has no factual basis. Plaintiff's third "claim" – that the ALJ's residual functional capacity assessment, which included a sit/stand option, is inconsistent with Dr. Redmond's July 12, 2004, report – also lacks merit because Dr. Redmond's restriction of not sitting more than two hours at a time is entirely consistent with the ALJ's finding. In fact, the hearing decision reveals that the ALJ accepted Dr. Redmond's assessment. As to plaintiff's arguments that x-ray reports from Dr. McMahon are "lies," there is no evidence that plaintiff is a medical doctor or otherwise qualified to render medical opinions. Therefore, the court rejects plaintiff's first and fourth "claims."

At best, plaintiff's motion for summary judgment presents one issue which has an arguable basis in either fact or law. Specifically, it appears that at her second "claim" plaintiff asserts that the ALJ failed to account for "bony sclerosis," and at her first and fourth claims that the ALJ did not account for muscle, ligament, tendon, and nerve deficits. These arguments challenge ALJ's residual functional capacity assessment and are the gravamen of plaintiff's motion. Therefore, the court will consider whether the ALJ's residual functional capacity assessment was based on substantial evidence in the record as a whole.

Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). In this case, the ALJ concluded that plaintiff has severe impairments related to her back, knees, and left shoulder. Based on these impairments, the LAJ found that plaintiff had the residual functional capacity to perform light work with a sit/stand option. The hearing decision shows that, in making this finding, the ALJ considered all of the

medical evidence of record and did not reject any source. In particular, the ALJ noted that "all the medical evidence . . . [is] consistent [with a finding of] a greater residual functional capacity . . . than the RFC submitted in the hypothetical questions to the vocational expert."

The court finds that this is indeed an accurate assessment of the medical evidence summarized above. All of the reports of plaintiff's x-rays were unremarkable and none showed any significant abnormality. Dr. Redmond's assessment is consistent with light work with a sitting limitation. Similarly, Dr. Entwistle opined that plaintiff's functional capacity permitted at least light work. The examining doctor at Avera United Clinic observed in 2005 that plaintiff had a full range of motion and did not observe any popping or abnormalities in plaintiff's joints. Finally, Dr. Wang found that plaintiff's functional capability was unrestricted.

The only evidence to suggest a more limited functional capacity is plaintiff's testimony, which the ALJ rejected as not fully credible. The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional

restrictions. See id. at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).

> Regarding plaintiff's credibility, the ALJ stated:
>
> I have considered claimant's subjective complaints. . . .  In this regard, I find her complaints are not fully credible.  The objective evidence does not support her allegations to the extent alleged.  Claimant has medically determinable impairments that could reasonably be expected to produce her pain and other symptoms. (citation omitted).  However, the medical evidence does not support a finding that she is precluded from all work.
>
> Claimant overstates her limits and pain.  Her activities of daily living have been extensive and have included looking for jobs . . ., writing complaints to the State of California Medical Board . . ., and writing long letters in support of her claims for SSI benefits. . . .  At Exhibit 9E/2, she indicated that she had an ER visit for hemorrhoids on July 16, 2005, but there do not appear to be any medical records regarding this ER visit in the file.  At Exhibit 10E/7, she describes at length her problems with trying to obtain workers' compensation benefits.  At Exhibit 9E/1, claimant alleges that she needs a cane to stand up from a sitting position, but there is no prescription . . . indicating that she requires a cane.

The court finds that the ALJ's analysis is based on proper legal principles and substantial evidence.  In particular, the ALJ noted inconsistencies in the record, the lack of treatment consistent with plaintiff's subjective complaints, and her activities of daily living.  Further, the court recalls that Dr. Entwistle opined: "Severity of pain complaints and self-limitations of activity seem rather disproportionate to the objective findings on review of the records."

///

///

///

///

///

## V.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 18) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 22) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: July 2, 2008

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE